# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| SARAH BOWMAN GLASS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:17-cv-0026-JEO |
| | ) | |
| CITY OF GLENCOE and | ) | |
| JAMES SHELNUTT; | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

In her now-governing Amended Complaint, Plaintiff Sarah Bowman Glass

("Plaintiff") raises claims under 42 U.S.C. § 1983 and Alabama tort law against

two Defendants: the City of Glencoe, Alabama (the "City"), and James Shelnutt

("Shelnutt"), a judge on the City's municipal court (collectively "Defendants").

(Doc.[1] 30). Those claims all arise from a core allegation that when Shelnutt issued

an order revoking Plaintiff's probation, he lacked a valid Alabama law license, as

required under state law to serve as a municipal court judge. The cause comes to

be heard on three motions. The first two, filed separately by each of the

Defendants, seek dismissal under FED. R. CIV. P. 12(b)(6). (Docs. 7, 20). In the

---

[1]References to "Doc(s). ___" are to the document numbers of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk of the Court. Unless otherwise noted, pinpoint citations are to the page of the electronically filed document in the court's CM/ECF system, which may not correspond to pagination on the original "hard copy" presented for filing.

third motion, the City asks the court to strike two affidavits submitted by Plaintiff in opposition to the City's motion to dismiss. (Doc. 32). Upon consideration, the court[2] concludes that the City's motion to strike is moot and that both motions to dismiss are due to be granted.

## I.    REVIEW STANDARDS

Rule 12(b)(6), FED. R. CIV. P., authorizes a motion to dismiss a complaint in whole or in part on the ground that its allegations fail to state a claim upon which relief can be granted.   On such a motion, the "'issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)).  The court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences.  *Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam).

Rule 12(b)(6) is read in light of Rule 8(a)(2), FED. R. CIV. P., which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

---

[2]The parties have consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 13).

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level ...." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

## II.    BACKGROUND[3]

Under both the state constitution and by statute, municipal court judges in Alabama are required to be licensed to practice law in this state. Ala. Const. of 1901, Art. VI, § 145; Ala. Code § 12-14-30(d). Plaintiff alleges, however, that Defendant Shelnutt, a judge on the City of Glencoe Municipal Court, did not have a valid law license at the time he issued an order revoking Plaintiff's probation on

---

[3]The facts set forth herein are based on the allegations of the Amended Complaint, which are assumed to be true, consistent with the standard of review applicable to a motion to dismiss under FED. R. CIV. P. 12(b)(6). However, these are the "facts" only for purposes of the instant motions to dismiss and may not be the actual facts.

January 7, 2015, whereupon she spent the next eight days in jail. (Doc. 30 ¶¶ 8-10, 14). Plaintiff also asserts that the City's Mayor, Charles Gilchrist[4]; the City Prosecutor; the City Attorney "and/or other city officials knew or should have known of Shelnutt's unlicensed status," having been made aware of same by Plaintiff's counsel. (Doc. 30 ¶ 11). Despite such knowledge, Plaintiff says, those City officials failed "to remedy the situation or mitigate the damages caused to the Plaintiff." (*Id.* ¶ 12). Plaintiff further claims that the City failed both "to properly train and supervise its officers, employees, against or assigns with regard to the constitutional right to due process" and "to implement proper policies and procedures to protect Plaintiff's constitutional rights." (*Id.* at 1-2).

Based on such allegations, Plaintiff raises claims in her Amended Complaint under both § 1983 and Alabama tort law. (Doc. 30). First, Plaintiff maintains that Defendants are liable under § 1983 for violating Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment (*id.*, Counts I and II) and the Fourth Amendment's prohibition against unreasonable seizures. (*Id.*, Counts III and IV). Plaintiff also contends that Shelnutt, but not the City, is liable under § 1983 for subjecting her to cruel or unusual punishment in violation of the Eighth Amendment. (*Id.*, Count V). With regard to her state-law claims, Plaintiff

---

[4]Plaintiff originally sued Mayor Gilchrist in addition to the City and Shelnutt. (Doc. 1). However, Plaintiff has voluntarily dismissed her claims against Gilchrist. (Docs. 29, 35).

contends that Defendants are liable for false imprisonment and false arrest (*id.*,

Counts VI and VII), and that the City is also liable for negligent, reckless,

"and/or" wanton training "and/or" "monitoring." (Doc. 30, Count VIII). In her

demand for relief, Plaintiff seeks a declaration that Defendants violated her

constitutional rights, an award of compensatory damages against both Defendants,

an award of punitive damages against Shelnutt, as well as attorney's fees and

costs. (*Id.* at 13).

Shelnutt and the City have filed separate motions to dismiss all claims

pursuant to Rule 12(b)(6)[5]. (Docs. 7, 20). In support, Shelnutt argues that he

enjoys absolute judicial immunity on all of Plaintiff's claims. (*See* Docs. 7, 8, 31).

The City, in turn, contends that Plaintiff has failed to allege facts plausibly

supporting that the City caused or is otherwise legally responsible for any

---

[5]The respective Rule 12(b)(6) motions to dismiss filed by the City and Shelnutt are actually directed at Plaintiff's original complaint. (*See* Docs. 1, 7, 20). While those motions were pending, however, Plaintiff filed her First Amended Complaint. (Doc. 30). That amendment supersedes the original and is now Plaintiff's operative pleading. *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007). Thus, the motions to dismiss are moot insofar as they challenge the sufficiency of Plaintiff's original complaint. *N.Y. Life Ins. Co. v. Grant*, 57 F. Supp. 3d 1401, 1409 (M.D. Ga. 2014). Nonetheless, courts have discretion to consider a pending motion to dismiss as addressed to a later-filed amended pleading. *See id.* ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.") (quoting 6 Charles Alan Wright et al., *Fed. Prac. & Proc.* § 1476 (3d ed. 2011)). It is appropriate to do so here because Plaintiff's allegations and claims as it relates to both the City and Shelnutt are the same or at least materially similar in her original and amended pleadings.

violation of her rights under either federal or state law. (*See* Docs. 20, 21, 33; *see also* Docs. 8, 19[6]).

Plaintiff opposes both motions to dismiss. (Docs. 26, 27, 28). Her brief in response to the City's motion also appends two affidavits. (Doc. 28-1). One is sworn by Justin Hayes, the former public defender for the City. (Doc. 28-1 at 2-3 ("Hayes Aff.")). The other is from Jonathan Welch, an attorney Plaintiff retained after learning of Shelnutt's unlicensed status, while she was in jail. (Doc. 28-1 at 4-5 ("Welch Aff.")). The City has filed a motion to strike both affidavits (Doc. 32, 36), which Plaintiff also opposes. (Doc. 34).

## III. DISCUSSION

### A. The City's Motion to Strike

As a threshold matter, the court considers the City's motion to strike the affidavits of Hayes and Welch. (Doc. 32). In the former, Hayes states that sometime "in January 2015," while serving as the public defender for the City, he learned that Shelnutt's name did not appear on the attorney membership list on the Alabama State Bar Association (the "Bar") website. (Hayes Aff. ¶ 3). Hayes indicates that a representative of the Bar informed him thereafter that such an

---

[6]The City's motion to dismiss incorporates by reference arguments made by both Shelnutt (*see* Docs. 7, 8) and by Mayor Charles Gilchrist (see Docs. 18, 19), who was originally also a defendant in this action but has since been dismissed. (*See* Doc. 21 at 4-5).

omission indicated that Shelnutt was "not in good standing." (*Id.* ¶ 4). Hayes claims he then relayed that fact to the Glencoe City Attorney. (*Id.* ¶ 5).

In his affidavit, Welch indicates that Plaintiff retained him as her attorney during the eight-day period she was confined to jail, after Shelnutt had revoked her probation. (Welch Aff. ¶¶ 2-3). Welch says he then spoke the Glencoe City Prosecutor about Shelnutt's unlicensed status as it related to Plaintiff's case. (*Id.* ¶ 4). Apparently as a result, a "special judge" set aside Shelnutt's order, and Plaintiff was released from jail. (*Id.*)

In support of its motion to strike the affidavits, the City argues, among other things, that it is inappropriate and unnecessary as a procedural matter for Plaintiff to file them in connection with a motion to dismiss under Rule 12(b)(6). (Doc. 32, ¶ 2). The City is generally correct in that assertion. The inquiry at the Rule 12(b)(6) stage is to determine merely whether the plaintiff has pled sufficient material to state a legally cognizable claim for relief. In that undertaking, the court is must accept the complaint's well-pled allegations as true, affording the plaintiff the benefit of all reasonable inferences flowing from those allegations. So to survive a Rule 12(b)(6) motion, a plaintiff need do no more than plead, *i.e.*, allege in her complaint, facts upon which the law would authorize recovery. As such, it is wholly unnecessary for the plaintiff to proffer, and generally improper

for the court to consider, extrinsic evidence on a Rule 12(b)(6) motion. *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." (*quoting Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006)); *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1298 (11th Cir. 2007) ("The district court dismissed Watts' complaint under Rule 12(b)(6). We are at the pleading stage, not the proof stage.").

Plaintiff responds, however, that the court may consider the affidavits on the theory that they are "central" to her claims. (Doc. 34 at 3). It is true that, although a court faced with a Rule 12(b)(6) motion is generally restricted to reviewing the four corners of the complaint, it may also consider documents that are both "central" to the plaintiff's claim and undisputedly authentic.[7] *See United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015); *SFM Holdings, Ltd. v. Banc of Amer. Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *see also* Rule 10(c), FED. R. CIV. P. But the difficulty with Plaintiff's theory is that, in

---

[7]If the court considers extrinsic evidence beyond that scope, however, the motion must be treated as one for summary judgment under FED. R. CIV. P. 56. *See* Rule 12(d), FED. R. CIV. P.; *SFM Holdings*, 600 F.3d at 1337; *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010).

this context, a document is typically "central" to a claim only if it is a written instrument attached to or referenced in the complaint and itself gives rise, or is otherwise intrinsic, to the claim, such as an insurance policy or other contract or a promissory note; it does not encompass witness affidavits that merely recount circumstances or information relevant to a claim. *See Adamson v. Poorter*, 2007 WL 2900576, at *3 (11th Cir. Oct. 4, 2007); *Intersport*, 896 F. Supp. 2d at 1109; *Bros. v. Saag*, 2014 WL 838890, at *4-5 (N.D. Ala. Mar. 4, 2014); *Holloway v. American Media, Inc.*, 947 F. Supp. 2d 1252, 1262 n. 12 (N.D. Ala. 2013); *Lawrence v. Christian Mission Ctr. Inc. of Enter.*, 780 F. Supp. 2d 1209, 1215 (M.D. Ala. 2011)[8]. If it were otherwise, almost all evidence would be "central" to a claim, and the distinction between motions to dismiss under Rule 12(b)(6) and motions for summary judgment under Rule 56 would be eviscerated.

Hayes and Welch are but third-party witnesses, and their affidavits merely recite some of their activities related to Plaintiff's case. Moreover, the affidavits are not referenced in the complaint; indeed, they were not created until after Defendants filed their pending motions to dismiss. In its discretion, *see*

---

[8]Plaintiff has referenced two cases to support her argument that the affidavits of Hayes and may be considered in connection with a Rule 12(b)(6) motion: *Fassina v. CitiMortgage, Inc.*, 2012 WL 2577608 (N.D. Ala. July 2, 2012), and *Speaker v. United States Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371 (11th Cir. 2010). While those cases cite the rule that documents that are "central" to a claim may be considered on a motion to dismiss, neither supports that the affidavits here fit that mold.

*Intersport, Inc. v. T-Town Tickets LLC*, 896 F. Supp. 2d 1106, 1109 (N.D. Ala. 2012), the court concludes that the affidavits are extrinsic evidence and are not "central" to Plaintiff's claims so as to render them subject to consideration on a Rule 12(b)(6) motion.

Plaintiff nevertheless insists that her presentation of the affidavits was "necessary" to "rebut" certain "unsupported and speculative statements" that went "beyond the allegations" of her complaint. (Doc. 34 at 1-2). In particular, Plaintiff has pled that, when Shelnutt revoked her probation and remanded her to jail on January 7, 2015, "he was not a licensed attorney recognized by the Alabama State Bar Association." (Doc. 30, ¶ 10). In response, the City has argued that the court should not credit that allegation on the ground that it is "conclusory." (Doc. 21 at 14). The City contends, rather, that Plaintiff is required to plead additional details regarding exactly *why* Shelnutt allegedly was not a licensed attorney, which Plaintiff has not done. (*Id.* at 14-15). The City then further offers to dispel any such uncertainty, claiming in its brief, "upon information and belief," that Shelnutt merely did not pay his bar dues on time and that he corrected the failure immediately once it was brought to his attention. (*Id.* at 15). As such, Plaintiff argues that she filed the affidavits of Hayes and Welch to (1) "rebut the [City's] unsupported assertions" that Shelnutt had merely failed to

pay his bar dues on time and had promptly corrected issue and (2) "to support the facts pled in the complaint" with regard to the City's argument that Plaintiff has failed to provide necessary details underlying Shelnutt's alleged lack of a valid law license.  (Doc. 34 at 2).

Ultimately, however, the court concludes that it is immaterial whether it considers the affidavits at this time because it is not necessary to do so, and the affidavits do not materially aid Plaintiff with respect to either purpose she now cites for offering them.  For starters, insofar as Plaintiff suggests the affidavits "support the facts pled in her complaint," it is difficult to see what she means.  If she is trying to amend or supplement her complaint by way of third-party affidavits, that is improper.  *See Shah v. Orange Park Med. Ctr.*, 2015 WL 1638231, at *1 (M.D. Fla. Apr. 13, 2015).  If she believes additional allegations are necessary to adequately state her claims, then she should seek leave to file an amended complaint.  *See id.*  Moreover, to the extent Plaintiff conceives the affidavits as meeting the City's argument that the complaint is deficient because it fails to allege enough underlying facts regarding how or why Shelnutt lacked a valid license to practice law, neither affidavit is up to that task.  That is to say, the only additional information referenced in the affidavits on that front is Hayes's testimony that, sometime in January 2015, he "learned" that Shelnutt's name did

not appear on the Bar's website and that such meant he was "not in good standing with the Bar." (Hayes Aff. ¶ 4).  But on its face, that does not explain what circumstance might have led to Shelnutt's name being omitted from the Bar's website, and Hayes expressly admits he does not know.  (*See id.*)  Likewise, while Plaintiff claims she filed the affidavits to counter the City's "unsupported and speculative" assertion that Shelnutt's name did not appear on the Bar membership rolls simply because he did not pay his bar dues on time, it is plain that neither Hayes's nor Welch's affidavit offers anything whatever to dispute that assertion.

Even so, the court concludes that it is bound at the Rule 12(b)(6) stage to credit Plaintiff's pled allegation that, at the time he issued his order revoking Plaintiff's probation and remanding her to jail, Shelnutt "was not a licensed attorney recognized by the Alabama State Bar Association."  (Doc. 30, ¶ 10).  On a Rule 12(b)(6) motion, the court must credit the plaintiff's well-pled allegations, irrespective of what evidence may support them, either upon the filing of the action or as might be revealed in discovery.  Plaintiff herself maintains that this principle applies to her allegation that Shelnutt was not a licensed attorney, and the court agrees.  The City disputes that, contending that the allegation need not be accepted because it is "conclusory," insofar as Plaintiff fails to supply additional background circumstances relating to exactly how or why Shelnutt was not

licensed. However, the City does not offer any legal authority or rationale to support that the particular circumstances underlying Shelnutt's lack of a valid law license at the relevant time, whether because of a failure to pay bar dues or for some other reason, should matter to the viability of Plaintiff's claims. Therefore, the court will credit Plaintiff's allegation that Shelnutt was not a licensed attorney with the Bar when he ruled in Plaintiff's probation revocation case on January 7, 2015. Because it does not matter whether the court considers the affidavits, the City's motion to strike them is moot. With that, the court turns to Defendants' respective motions to dismiss, starting with Shelnutt's.

## A. Shelnutt's Motion to Dismiss

Plaintiff raises claims against Shelnutt arising under both federal law and state law. These are all based on allegations that when Shelnutt, acting as a municipal court judge, issued his order revoking Plaintiff's probation and remanding her to jail on January 7, 2015, Shelnutt did not hold a valid license to practice law in Alabama, as required to serve in his office under state law. The federal claims are brought pursuant to 42 U.S.C. § 1983, which creates a tort remedy for violations of federal constitutional rights committed by persons acting under color of state law.[9] *Hamilton By and Through Hamilton v. Cannon*, 80 F.3d

---

[9] Section 1983 provides in pertinent part:

1525, 1528 (11th Cir. 1996). On those claims, Plaintiff contends Shelnutt violated her rights under the Due Process Clause of the Fourteenth Amendment, the Fourth Amendment, and the Eighth Amendment. On her state-law claims, Plaintiff contends that Shelnutt's lack of a valid law license stripped him of jurisdiction and rendered his order legally invalid, giving rise to a cause of action against him for false arrest and false imprisonment.

Shelnutt moves to dismiss, arguing that, even assuming that when he ruled he did not have a valid Alabama license to practice law,[10] he is protected by judicial immunity. Judges are entitled to absolute judicial immunity under § 1983 for those acts taken while they are acting in their judicial capacity unless they acted in the " 'clear absence of all jurisdiction.' " *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005). "This immunity applies even when the judge's acts are in error, malicious, or were in

---

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[10]Shelnutt generally disputes Plaintiff's allegation that he was disqualified to serve due to the lack of a valid law license. (*See* Doc. 8 at 2 n. 1; Doc. 31 at 2 & n. 2). For its part, the City has offered, "upon information and belief," that Shelnutt may have been late in paying his bar dues and that he corrected the matter immediately upon discovering the situation. (Doc. 21 at 15). Either way, as discussed previously in the text, for purposes the Rule 12(b)(6) motions to dismiss, the court is crediting Plaintiff's pled assertion that Shelnutt's did not have a valid law license at the time he revoked Plaintiff's probation.

excess of his or her jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000). Likewise, "judges acting in an official capacity are entitled to absolute judicial immunity under Alabama law." *Ex parte City of Greensboro*, 948 So. 2d 540, 542 (Ala. 2006). The Alabama Supreme Court has recognized that such state-law immunity also "is extended even where the officer acts in error, maliciously, or in excess of his authority." *Id.* (*quoting City of Bayou La Batre v. Robinson*, 785 So. 2d 1128, 1133 (Ala. 2000), *quoting Almon v. Gibbs*, 545 So. 2d 18, 20 (Ala. 1989), *citing*, in turn, *Stump*, 435 U.S. at 362, and *Scott v. Dixon*, 720 F.2d 1542 (11th Cir. 1983)); *see also Ex parte City of Tuskeegee*, 932 So. 2d 895, 908-910 (Ala. 2005); *cf. Bogle v. Galanos*, 503 So. 2d 1217, 1219 (Ala. 1987) (recognizing that absolute prosecutorial immunity under state law "is at least as broad as immunity under a § 1983 action").

Plaintiff generally acknowledges these well-worn principles, and she correctly does not dispute that Shelnutt was at least ostensibly acting in a judicial capacity when he issued an order on behalf of the municipal court revoking Plaintiff's probation and remanding her to jail. *See Harris v. Menendez*, 817 F.2d 737, 741 (11th Cir. 1987), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), *as recognized in Prather v. Norman*, 901 F.2d 915, 918 (11th Cir. 1990); *Owens v. Kelley*, 681 F.2d 1362, 1370 (11th Cir. 1982); *Harris v.*

*Goderick*, 608 F. App'x 760, 762-63 (11th Cir. 2015).  It is also clear that municipal court judges in Alabama generally possess jurisdiction to issue such orders.  *See* Ala. Code § 12-14-13(i).  Plaintiff takes the position, however, that, because Shelnutt then lacked a valid law license as required under state law, he was stripped of all judicial authority, his order was void, and he therefore cannot invoke judicial immunity.  Shelnutt replies that, even assuming *arguendo* he didn't have a valid law license, he was still at least a "de facto judge" and is thus entitled to judicial immunity.  The court agrees with Shelnutt.

The "de facto officer" doctrine "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Nguyen v. United States*, 539 U.S. 69, 77 (2003) (quoting *Ryder v. United States*, 515 U.S. 177, 180 (1995)); *accord Malone v. State*, 406 So. 2d 1060, 1062 (Ala. Crim. App. 1981) ("A de facto officer is one who exercises the duties of a de jure office under color of appointment or election, and his official acts are valid."); *see also* Ala. Code § 36-1-2 ("The official acts of any person in possession of a public office and exercising the functions thereof shall be valid and binding as official acts in regard to all persons interested or affected thereby, whether such person is lawfully entitled to hold office or not and whether such person is lawfully

qualified or not ....").  Under the doctrine, a person acts as a "de facto judge" where he or she "occupies a judicial office under some color of right, ... exercises the duties of the judicial office under color of authority pursuant to an appointment or election thereto, and for the time being performs those duties with public acquiescence, though having no right in fact, because the judge's actual authority suffers from a procedural defect or a technical defect of statutory authority."  46 Am. Jur. 2d Judges § 231 (footnotes omitted); *see also Glidden Co. v. Zdanok*, 370 U.S. 530, 535 (1962) ("[W]here there is [a judicial] office to be filled and one, acting under color of authority, fills the office and discharges its duties, his actions are those of an officer de facto, and binding upon the public." (quoting *McDowell v. United States*, 159 U.S. 596, 602 (1895)); *Ex parte Ward*, 173 U.S. 452, 455-56 (1899) (holding that defendant who has been convicted and sentenced for a crime by a judge de facto, acting under color of office, and who is detained in custody under such sentence, cannot be discharged on habeas corpus, though the judge had no valid title to the office); *Gwin v. State*, 808 So. 2d 65, 67 (Ala. 2001) (although circuit judge who accepted defendant's guilty plea was not qualified to serve due to failure to satisfy statutory residency requirement, judge was a de facto officer, and the criminal judgment and sentence he entered was valid); *Riley v. Bradley*, 41 So. 2d 641, 652-53 (Ala. 1948) ("[A]lthough the appointment of a judge to an

17

existing office is void, if he has been duly commissioned ... and acted at a time and place provided by law for holding the court over which he presides or in proceedings in which he participated, he is a de facto Judge or Justice, as the case may be, and his acts are valid and unimpeachable."); *Walker v. State*, 39 So. 242, 242 (Ala. 1905) (although state law creating judicial circuit was in violation of the Alabama constitution, the judge appointed as presiding judge for such circuit was a de facto judge and his adjudications were not void); *Benjamin v. State*, 156 So. 3d 424, 458-59 (Ala. Crim. App. 2013) (special circuit judge who presided over capital murder trial was a de facto officer even assuming he had then exceeded the "temporary service" period authorized by the appointment statute).

And to the point here, "a de facto judge ... enjoys absolute judicial immunity in matters concerned with the discharge of the judge's judicial duties." 46 Am. Jur. 2d Judges § 235 (footnote omitted); *accord White by Swafford v. Gerbitz*, 892 F.2d 457, 462 (6th Cir. 1989); *Kemp ex rel. Kemp v. Perkins*, 324 F. App'x 409, 414-15 (5th Cir. 2009); *Barela v. Putka*, 171 F. App'x 163, 163 (9th Cir. 2006); *Maunsell v. Johnson*, 100 F. App'x 47, 49 (2d Cir. 2004); *cf. Boyd v. Carroll*, 624 F.2d 730, 732 (5th Cir. 1980)[11] (stating in dicta that a party may have "de facto

---

[11]The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

judicial status sufficient to afford judicial immunity"); *Ex parte Simpson*, 36 So. 3d 15, 28-29 (Ala. 2009) (holding that, because "defenses are as available to a de facto officer as they are to a duty appointed officer," defendant mayor enjoyed absolute legislative immunity for his vote as a town council member in passing zoning ordinance, even assuming he was statutorily disqualified from holding office based on a prior criminal conviction).

Plaintiff does not specifically deny that Shelnutt could claim judicial immunity if he were deemed a de facto judge. Plaintiff insists, rather, that Shelnutt could not be a de facto judge if he did not have a valid law license. (Doc. 27 at 8). That is so, Plaintiff says, for two reasons. First, Plaintiff emphasizes that Shelnutt was required to hold a valid law licence under Alabama law to qualify for service as a municipal court judge. And second, Plaintiff further insists that "the right to appear before a [licensed] lawyer-judge ... is amongst the fundamental and essential due process guaranteed to a defendant facing [possible] incarceration," as was Plaintiff at her probation revocation hearing. (Doc. 27 at 2). Neither argument is convincing.

To begin with, Plaintiff's assertion that Shelnutt could not be a de facto judge because he did not meet the qualifications for his office under state law evidences a basic misunderstanding of the de facto officer doctrine. By definition,

that doctrine can apply only where there is some sort of irregularity or defect under positive law as it relates to the officer's qualifications, appointment, or election. *See* 46 Am. Jur. 2d Judges § 232 ("To constitute a de facto judge, one's incumbency of the office must be illegal in some respect."). As the United States Supreme Court explained long ago:

> "[A]ll that is required when there is an office to make an officer de facto, is that the individual claiming the office is in possession of it, performing its duties, and claiming to be such officer under color of an election or appointment, as the case may be. *It is not necessary that his election or appointment be valid, for that would make him an officer de jure*.

*Norton v. Shelby Cty.*, 118 U.S. 425, 445 (1886) (emphasis added). Accordingly, Plaintiff's argument that Shelnutt could not be a de facto judge because he did not meet the qualifications for office under state law fails.

Moreover, while Plaintiff attempts to distinguish authorities cited by Defendants to support that Shelnutt was a de facto judge, Plaintiff has not cited any case holding that the de facto officer doctrine does not apply to a judicial office holder based on his failure to possess a valid law license required under state law at the time of the relevant proceeding. Indeed, the decisions considering that question unearthed by the court's research are to the contrary. *See Rosell v. Central W. Motor Stages, Inc.*, 89 S.W.3d 643, 651-652 (Tex. Ct. App. 2002)

(rejecting challenge to the authority of judge to have presided at trial based on the suspension of his state law license after taking office for nonpayment of bar dues, despite state constitutional provision requiring a valid license; "[A]s long as a duly elected judge is holding office under color of law, his actions will be binding on the parties and subject to appeal as in any other lawsuit."); *Pierre v. State*, 821 So. 2d 1174, 1176-77 (Fla. Ct. App. 3d Dist. 2002) ("[E]ven assuming that there was a deficiency in the retired judge's Bar membership status [when he presided at the defendant's sentencing hearing], he is nonetheless properly viewed as a de facto judge whose actions are valid."); *State v. Smith*, 756 P.2d 1335, 1336-37 (Wash. Ct. App. 1st Div. 1988) (even if court commissioner was not technically qualified for her office due to the lack of state law license, she had de facto authority to issue search warrant); *State v. Mayhew*, 207 N.W.2d 330, 332 (N.D. 1973) (individual was a "de facto county justice" despite not being licensed to practice law in the state and that, as a result, he had been ineligible for appointment under state law); *Morford v. Territory*, 63 P. 958, 959-60 (Okla. 1901) ("[N]otwithstanding the fact that the probate judge was not a licensed attorney at the time he was elected [as required by law], there is no question that at the time said cause was tried in the probate court he was a de facto probate judge of said county, and had full power and authority to try said cause and administer oaths to

witnesses."). Persuaded by these decisions, the court concludes that the de facto officer doctrine may apply to Shelnutt based on his alleged lack of a valid Alabama law license required under Alabama state law to serve as a municipal court judge.

Plaintiff also insists, though, that the de facto officer doctrine should not apply because, Plaintiff says, she had a federal due process right to have a "lawyer-judge" preside at her probation revocation proceeding and that such right was infringed by Shelnutt's failure to have a valid law license. Indeed, Plaintiff devotes the majority of her brief in opposition to Shelnutt's motion to dismiss to that due process argument. (Doc. 27 at 2-6). It is clear, however, as explained below, that Plaintiff is simply wrong in her assertion that she had a federal due process right to have her probation revocation case heard by lawyer-judge.

In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the Supreme Court held that, although the revocation of parole involves a deprivation of liberty for due process purposes, those making the final decision on the matter "need not be judicial officers or lawyers." *Id.* at 489. And in the succeeding term, the Court imported the same procedural due process requirements to the revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 786-91 (1973); *see also Morgan v. Wainwright*, 676 F.2d 476, 478 (11th Cir. 1982). Because, under those decisions,

the issue of whether Plaintiff's probation was subject to revocation did not have to be determined by a "judicial officer" or a "lawyer," it follows that whether Shelnutt held a valid Alabama law license when he ruled in Plaintiff's case is immaterial for federal due process purposes.

The authorities Plaintiff cites in support of her due process arguments are not to the contrary. Those cases all involve *criminal trials*, not the revocation of probation or parole. (*See* Doc. 27 at 2-5 (citing *Argersinger v. Hamlin*, 407 U.S. 25 (1972); *North v. Russell*, 427 U.S. 328 (1976); *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57 (1972); *City of White House v. Whitley*, 979 S.W.2d 262 (Tenn. 1998); *In re Judicial Interpretation of 1975 Senate Enrolled Act No. 441*, 332 N.E.2d 97, 98 (Ind. 1975); *Gordon v. Justice Court*, 525 P.2d 72 (Cal. 1974)). So even insofar as those cases actually address whether due process requires a lawyer-judge to preside at a criminal trial,[12] they are distinguishable. *See*

---

[12]Neither the Supreme Court nor our circuit court of appeals has recognized that the Due Process Clause requires a lawyer-judge to preside in all original criminal prosecutions involving potential incarceration, and the existence of such a right is debatable. *See, e.g., Melikian v. Avent*, 300 F. Supp. 516, 519 (N.D. Miss. 1969) (three-judge district court held that the "contention that the [Mississippi] Justice of the Peace Court is unconstitutional because a Justice of the Peace may be a person who is not trained in the law is unique and of no merit."), *rejected on other grounds by Brown v. Vance*, 637 F.2d 272 (5th Cir. Jan. 1981); Thomas R. Trenkner, *Annotation, Constitutional Restrictions on Nonattorney Acting as Judge in Criminal Proceeding,* 71 A.L.R.3d 562, § 2[a] (1976) (recognizing generally that claims raising constitutional objections to nonattorneys holding inferior judicial offices have met "with very limited success"); *cf. North v. Russell*, 427 U.S. 328, 333-38 (1976) (holding that the Due Process Clause did not preclude a trial before a lay police court judge where a trial de novo before a lawyer judge was available). Of course, this court need not wade into that thicket, given that (1) Plaintiff's claims here do not arise out of a criminal trial and (2) *Morrissey* and *Gagnon* establish that a defendant has no right

*Morrissey*, 408 U.S. at 480 ("Parole arises after the end of the criminal prosecution, including imposition of sentence. . . . Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.'"); *Gagnon*, 411 U.S. at 782 ("Probation revocation, like parole revocation, is not a stage of a criminal prosecution").

Based on the foregoing, court concludes that it sufficiently appears from the face of Plaintiff's Amended Complaint that Shelnutt was at least a de facto judge. He is therefore entitled to claim judicial immunity, which is a valid defense to Plaintiff's claims. And as a result, Plaintiff's claims against Shelnutt shall be dismissed.

### B.    The City's Motion to Dismiss

Plaintiff also claims that the City is liable under both § 1983 and Alabama tort law, again founded on her theory that her arrest and ensuing custody were unlawful because Shelnutt did not have a valid law license when he revoked her probation. The § 1983 claims allege violation of Plaintiff's rights under both the Due Process Clause of the Fourteenth Amendment and under the Fourth

---

to a lawyer-judge in connection with the revocation of probation.

Amendment.[13]  (Doc. 30, Counts I & III).  On her state law claims, Plaintiff

contends that Shelnutt's lack of a valid law license meant that his order was

invalid, such that her arrest and incarceration became tortious.  In support of her

claims against the City, Plaintiff asserts that various City officials, including

Mayor Gilchrist, the City Attorney, and the City Prosecutor were aware of

Shelnutt's unlicensed status and yet failed "to remedy the situation or mitigate the

damages caused to the Plaintiff."  (*Id.* ¶¶ 11-12).  Plaintiff additionally says that

the City exhibited "deliberate indifference" to her constitutional rights by failing

to properly train and supervise the City's officers and employees and failing to

implement policies and procedures to protect her constitutional rights.  (*Id.* at 1-2).

The City moves to dismiss all of Plaintiff's claims against it, on a host of grounds.

(*See* Docs. 20, 21, 33).

## 1. Section 1983 Claims

### a. Due Process

The Due Process Clause of the Fourteenth Amendment provides: "Nor shall

any State deprive any person of life, liberty, or property, without due process of

---

[13]In her original complaint, Plaintiff also asserted § 1983 claims against the City based on alleged violations of Plaintiff's rights under the Due Process Clause of the *Fifth Amendment* and under the Eighth Amendment.  (*See* Doc. 1, Count I & ¶ 19; *id.*, Count V).  However, Plaintiff conceded in her response to the City's motion that such claims were due to be dismissed (Doc. 28 at 2, 3), and Plaintiff has also omitted those claims from her Amended Complaint.  (See Doc. 30).  Accordingly, they are no longer part of the case.

law." U.S. Const. amend XIV, § 1. "In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006) (*quoting Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). Among other arguments, the City contends that it is not liable on such a claim because Plaintiff's allegation that Shelnutt lacked a valid law license when he revoked Plaintiff probation fails to plausibly demonstrate that she was afforded constitutionally inadequate process. The court agrees.

Again, Plaintiff's claims in her Amended Complaint hinge on her theory that Shelnutt's municipal court order revoking her probation was unlawful because he did not then possess a valid law license. However, as discussed in connection with Plaintif's claims against Shelnutt, under the Supreme Court's decisions in *Morrissey* and *Gagnon, supra*, federal due process principles do not require those deciding whether to revoke a defendant's probation to "be judicial officers or lawyers." *Gagnon*, 411 U.S. at 786 (*quoting Morrissey*, 408 U.S. at 489). Thus, Plaintiff had no federal due process right to have a "lawyer-judge" preside at her probation revocation proceeding.[14]

---

[14]Even assuming federal due process required some minimum level of legal training for Shelnutt in this setting, Plaintiff's allegations would not plausibly establish a constitutional violation.

While the Fourteenth Amendment did not itself entitle Plaintiff to a lawyer-judge, she also suggests that, because Shelnutt was required under the constitution and statutes of Alabama to hold a valid law license to serve as a municipal court judge, that he did not have such a license implies that Shelnutt's order was void for lack of jurisdiction, thereby giving rise, Plaintiff's says, to a due process violation.  (Doc. 28 at 7-8).  However, not every error of state law results in a violation of federal due process.  *Swarthout v. Cooke*, 562 U.S. 216, 221-22 (2011); *Rivera v. Illinois*, 556 U.S. 148, 158 (2009).  Rather, absent an overriding constitutional concern, the manner in which the state judicial system interprets its statutes is not subject to federal habeas review.  *Armenia v. Dugger*, 867 F.2d 1370, 1376 (11th Cir. 1989).  And in that vein, a claim that a state court lacked jurisdiction under state law does not itself present a federal constitutional issue.  *Gasquet v. Lapeyre*, 242 U.S. 367, 369 (1917) ("[T]here is nothing in the clauses of the 14th Amendment guarantying due process and equal protection which converts an issue respecting the jurisdiction of a state court under the Constitution

Plaintiff is careful to suggest only that Shelnutt did not hold a valid law Alabama license when he revoked her probation, not that he was never a lawyer or lacked legal training more generally. Indeed, the City points out that Shelnutt is currently listed as an attorney on the Bar's website, which further discloses he was admitted in 2003, https://www.alabar.org/for-the-public/find-a-member/#iconkey (last visited April 17, 2017).  The court may take judicial notice of such facts on a Rule 12(b)(6) motion.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, (2007); *Jackson v. United States*, 2014 WL 5474132, at *12 n. 6 (M.D. Fla. Oct. 29, 2014); *Hopkins v. GSLS GA, LLC*, 114 F. Supp. 3d 1290, 1297 (N.D. Ga. 2015).

and statutes of the state into anything other than a question of state law"); *Pooley v. Crosby*, 2005 WL 5977663, at *7 (N.D. Fla. Nov. 7, 2005). Accordingly, any federal due process claim against the City based on the proposition that Shelnutt's was without jurisdiction to act under state law is due to be dismissed on this ground alone.

But even if a want of jurisdiction under state law could violate federal due process, Plaintiff's theory that Shelnutt's order was void for lack of jurisdiction under state law is ill-founded. It is true that Alabama law required that Shelnutt hold a license to practice law in Alabama to qualify for service as a municipal court judge. Ala. Const. of 1901, Art. VI, § 145; Ala. Code § 12-14-30(d). But for reasons discussed previously, even if Shelnutt was not so licensed when he ruled in Plaintiff's case, his order remained binding and effective pursuant to the de facto officer doctrine. *See* Ala. Code § 36-1-2; *Gwin*, 808 So. 2d at 67; *Riley*, 41 So. 2d at 652-53; *Rosell*, 89 S.W.3d at 651-652; *Pierre*, 821 So. 2d at 1176-77; *Smith*, 756 P.2d at 1336-37; *Mayhew*, 207 N.W.2d at 332; *Morford*, 63 P. at 959-60. Plaintiff's due process claim against the City under § 1983 is also due to be dismissed on that ground. *See Jimenez v. Fourth Judicial Dist. Attorney's Office*, 663 F. App'x 584, 586-87 (10th Cir. 2016); *Hamilton v. Hood*, 806 F. Supp. 429, 435-36 (S.D.N.Y. 1992).

### b.     Fourth Amendment

Plaintiff also claims that the City is liable for a violation of the Fourth Amendment, which provides in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...." U.S. Const. amend. IV, cl. 1.  Specifically, Plaintiff claims that her "arrest, detainment or incarceration ..., which was ordered without authority by an unlicensed and unqualified judge [Shelnutt], constitutes a 'seizure' in violation of the Fourth Amendment."  (Amd. Compl. ¶ 30).  Plaintiff contends that the City is liable under § 1983 under a theory that the City is legally responsible for Shelnutt's actions as a municipal court judge and because "the city prosecutor, the city attorney, the mayor and/or other city officials knew and/or were made aware of Shelnutt's questionable status [but] they decided not to act to remedy the situation or mitigate the damages caused to the Plaintiff."  (*Id.* ¶ 31).

The court concludes that this claim also fails because, at a minimum, even if unlicensed at the time, Shelnutt was still at least a de facto judge when he issued his order revoking Plaintiff's probation.  So despite such an alleged defect or irregularity in Shelnutt's qualifications, his judicial order remained valid under state law, and Plaintiff's ensuing arrest and detention did not violate the Fourth Amendment.  *See White*, 892 F.2d at 462 (despite procedural defects in judge's

appointment and seating, his actions at bond hearing and in binding an arrestee over to the grand jury as a material witness were valid and did not violate arrestee's civil rights); *cf. United States v. Williams*, 416 F.2d 4, 6 (5th Cir. 1969) (arrest by deputy sheriff did not violate the Fourth Amendment based on the fact that he had never been formally appointed in writing; deputy was at least a de facto peace officer and had the right to arrest for motor vehicle violations); *Malone v. County of Suffolk*, 968 F.2d 1480, 1482-83 (2d Cir. 1992) (despite being ineligible for appointment under state law, defendants in § 1983 action were de facto police officers, and their arrest of the plaintiff was lawful under state law and did not violate the Fourth Amendment); *Smith*, 756 P.2d at 1336-37 (even if court commissioner was not technically qualified for her office due to the lack of state law license, she had de facto authority to issue search warrant); *State v. Young*, 2005 WL 3097660, at *6 (Ohio Ct. App., 12th Dist. Nov. 21, 2005) ("We have not found, and appellant has not cited, any cases holding that the de facto officer doctrine does not apply when rights under the Fourth Amendment are allegedly violated."). Plaintiff's Fourth Amendment claim against the City under § 1983 is due to be dismissed.

### 2.    State-Law Claims

Plaintiff also brings claims under Alabama state law against the City,

asserting that it is liable for "false imprisonment" (Doc. 30, Count VI); "false arrest" (*id.*); and "negligent, reckless and/or wanton training and/or monitoring." (*Id.*, Count VIII). The false imprisonment and false arrest claims are, again, based on allegations that Plaintiff's arrest and detention were unlawful because they were based on Shelnutt's order revoking her probation, which Plaintiff maintains was void or otherwise illegal due to his lack of a valid Alabama law license. (*Id.* ¶¶ 48, 49). Plaintiff also further complains that City employees or officials were made aware of Shelnutt's unlicensed status, but they "decided not to act" to remedy her situation. (*Id.* ¶ 50). On her training "and/or" monitoring claims, Plaintiff asserts that the City failed to properly supervise Shelnutt by allowing him to continue operating as a municipal court judge despite his lack of a valid Alabama law license required under state law and by allowing Plaintiff to be kept in jail under Shelnutt's order that the City "knew or should have known to be illegal and/or void." (*Id.* ¶ 60).

But again, the court concludes that all of these claims are legally insufficient on their face because they are founded upon the premise that Shelnutt's order revoking Plaintiff's probation was void or otherwise invalid because he then lacked a valid Alabama law license. For reasons already discussed at length, Plaintiff's premise in that regard is false because, even if Shelnutt was not licensed

to practice law, his order was still binding and effective as to Plaintiff because it was that of at least a de facto judge. Accordingly, Plaintiff's state-law claims against the City are all due to be dismissed as well.

## IV. CONCLUSION

Based on the foregoing, the City's motion to strike the affidavits of Hayes and Welch (Doc. 32) is due to be denied as **MOOT**; the Rule 12(b)(6) motions to dismiss filed, respectively, by Defendant Shelnutt (Doc. 7) and by the City (Doc. 20) are both due to be **GRANTED**. The court will enter a separate final order.

**DONE**, this 20th day of April, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge